# IMPORTANT NOTICE
## <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT.  OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED:  OCTOBER 29, 2020
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2019-SC-0335-MR

GREGORY ESTES                                                                              APPELLANT

V.

ON APPEAL FROM COURT OF APPEALS
NO. 2019-CA-0509
JEFFERSON CIRCUIT COURT
NOS. 14-CI-002288 AND 18-CI-007474

HONORABLE ANGELA MCCORMICK BISIG,                        APPELLEE
JUDGE, JEFFERSON CIRCUIT COURT

AND

JAMES ESTES, CLARA ESTES,                        REAL PARTIES IN INTEREST
AND E.M.E.

## MEMORANDUM OPINION OF THE COURT

## AFFIRMING

## I. BACKGROUND

In 2010, James Estes entered into a plea deal under the terms of which he pleaded guilty to one count of first-degree sexual abuse.  James's granddaughter, E.M.E., was under the age of twelve when she endured the abuse.  Then-Jefferson Circuit Court Judge Shake accepted the terms of James's plea agreement and sentenced James to five years' imprisonment, with the entirety of the sentence probated.  James eventually served sixty days in jail for a probation violation.  Following the criminal case, E.M.E.'s mother

1

filed a civil suit on E.M.E.'s behalf against James and his wife, Clara, for damages related to the sexual abuse. During the pendency of the litigation, E.M.E. attained the age of majority and was substituted as a party. The claims against Clara were settled and she was dismissed as a party. Judgment was entered in E.M.E.'s favor against James for $9.9 million. E.M.E. later filed notice of a judgment lien.

Later, E.M.E. discovered that approximately two months prior to trial, Clara created a revocable trust agreement titled the "Clara Estes Trust Agreement." Clara and James's son, Gregory (E.M.E.'s uncle), was named as trustee. James and Clara transferred their marital home to the trust. In November 2018, the trust sold the home. That same month, E.M.E. filed an ex parte motion in the 2014 case seeking a restraining order under Kentucky Rule of Civil Procedure (CR) 65.03 restraining James and his "agents, representatives, and relatives" from "encumbering, disposing, spending or otherwise transferring any proceeds" from the sale. The trial court entered the restraining order on November 16, 2018. Gregory filed a motion to dissolve the restraining ordering on December 12, 2018.

On December 28, 2018, E.M.E. filed a complaint in Jefferson Circuit Court naming James, Clara, and Gregory as defendants. In the 2018 case, E.M.E. alleged James transferred the real property to the trust without consideration and with the intent to hinder, delay, or defraud her as James's judgment creditor. The trial court consolidated the 2018 action with the 2014 action.

2

In March 2019, the trial court entered an order denying Gregory's motion to dissolve the restraining order on a variety of grounds, including claims that the trial court lacked jurisdiction to enter the order. In the same March 2019 order, the trial court granted E.M.E.'s motion for injunctive relief. However, E.M.E. failed to post a bond as required by CR 65.05(1). Gregory filed no motion for relief from the March 2019 order pursuant to CR 65.07. Instead, he filed an original action in the Court of Appeals, petitioning that court for a writ of mandamus and/or prohibition. That court denied Gregory's writ petition and he appealed that denial to this Court as a matter of right. For the following reasons, we affirm the Court of Appeals.

## II. ANALYSIS

The issuance of a writ is an extraordinary remedy, and we have always been cautious and conservative in granting such relief. *Grange Mut. Ins. v. Trude*, 151 S.W.3d 803, 808 (Ky. 2004). The standard for granting petitions for writs of prohibition and mandamus is the same. *Mahoney v. McDonald-Burkman*, 320 S.W.3d 75, 77 n.2 (Ky. 2010) (*citing Martin v. Admin. Office of Courts*, 107 S.W.3d 212, 214 (Ky. 2003)). This Court set forth that standard in *Hoskins v. Maricle*:

> A writ . . . may be granted upon a showing that (1) the lower court is proceeding or is about to proceed outside of its jurisdiction and there is no remedy through an application to an intermediate court; or (2) that the lower court is acting or is about to act erroneously, although within its jurisdiction, and there exists no adequate remedy by appeal or otherwise and great injustice and irreparable injury will result if the petition is not granted.

3

150 S.W.3d 1, 10 (Ky. 2004). Here, Gregory claims the trial court lacked jurisdiction, therefore, his writ is of the first class. Pursuant to *Hoskins*, in order to grant a first-class writ, a court must find that (1) the trial court was "proceeding or [was] about to proceed outside of its jurisdiction" and (2) that "there [was] no remedy through an application to an intermediate court." *Id.*

Gregory argues "'jurisdiction,' in the writ-of-prohibition context, must mean something more than a restricted notion of traditional 'subject-matter' jurisdiction—authority to hear a class or type of case." However, contrary to Gregory's assertion, that is *exactly* what jurisdiction in the writ context means. We have explained:

> We feel it prudent to begin our review with a proper understanding of jurisdiction and what it means for a court to act outside its jurisdiction. Unfortunately, the term *jurisdiction* is often more easily used than understood. In Kentucky, circuit courts are courts of general jurisdiction, which means that circuit courts shall have original jurisdiction of *all* justiciable causes not vested in some other court. Jurisdiction, when used here, refers to subject-matter jurisdiction: the authority not simply to hear this case, but *this kind of case.* . . . A court acts outside its jurisdiction, accordingly, only where it has not been given, by constitutional provision or statute, the power to do anything at all.

*Davis v. Wingate*, 437 S.W.3d 720, 725 (Ky. 2014) (internal quotation marks and citations omitted). It is clear, then, that the type of "jurisdiction" we look to in our writ analysis is subject matter jurisdiction—a court's authority to hear this kind of case.

Gregory poses a litany of purported jurisdictional arguments. He argues the trial court acted without jurisdiction to either impose the restraining order against him in the first place (as he was not a party to the case) or to keep in

place "indefinitely"; lacked jurisdiction to impose a restraining order as a judgment collection tool; and lacked jurisdiction to keep the restraining order in place after granting E.M.E.'s motion for an injunction (for which she never paid the requisite bond). However, none of these arguments addresses the trial court's subject-matter jurisdictions over this *kind* of case. Rather, they amount only to a collection of allegations that the trial court erred in various ways. Presented with such an argument in another case, we have held:

> Appellant's argument is essentially that the trial court was acting contrary to law and therefore was acting outside its jurisdiction. Such an understanding of jurisdiction would effectively gut our procedures for appellate review because, under such an approach, the lower court would be proceeding outside its jurisdiction *every time* it made an erroneous decision, and so an extraordinary writ would be available for every alleged error. In the context of the extraordinary writs, "jurisdiction" refers not to mere legal errors but to subject-matter jurisdiction . . . which goes to the court's core authority to even hear cases.

*Lee v. George*, 369 S.W.3d 29, 33 (Ky. 2012).

Because Gregory makes no arguments based upon the trial court's subject matter jurisdiction, we need not address each of his arguments that the trial court erred. Those purported errors are the proper subject of appeals—not extraordinary writs.

In addition to arguing the trial court lacked jurisdiction, Gregory also claims his writ petition falls into an exception to our general writ jurisprudence. "This Court has consistently recognized an exception to the irreparable harm requirement in 'certain special cases.'" *Ridgeway Nursing & Rehab. Facility, LLC v. Lane*, 415 S.W.3d 635, 639–40 (Ky. 2013). In such

5

cases, this Court will entertain the petition "provided a substantial miscarriage of justice will result if the lower court is proceeding erroneously, *and* correction of the error is necessary and appropriate in the interest of orderly judicial administration." *Bender v. Eaton,* 343 S.W.2d 799, 801 (Ky. 1961).

As we held in *Ridgeway,* 415 S.W.3d at 641-42:

> our case law is clear that the certain-special-cases exception only supplants the requirement that a petitioner prove irreparable harm in the absence of a writ, not the requirement that there be no adequate remedy by appeal or otherwise. Because we have decided that Ridgeway has an adequate remedy by appeal or otherwise, Ridgeway cannot avail itself of the certain-special-cases exception.

(Footnote omitted.) With this precedent in mind, we begin our analysis of this issue by determining whether Gregory has an adequate remedy by appeal. If he does, our analysis ends there, as he cannot avail himself of the certain-special-cases exception.

Pursuant to CR 65.07(1), "[w]hen a circuit court by interlocutory order has granted, denied, modified, or dissolved a temporary injunction, a party adversely affected may within 20 days after the entry thereof move the Court of Appeals for relief from such order." In *Wyatt, Tarrant & Combs v. Williams,* 892 S.W.2d 584 (Ky. 1995), this Court considered whether a party who had not appealed an interlocutory order within the twenty-day period given by the court rule had an adequate remedy by appeal. In that case, Wyatt, Tarrant, and Combs moved for a restraining order and then a temporary injunction, just as E.M.E. did in the case at bar. Also, in that case Williams, like Gregory in the present case, failed to file a motion for relief under CR 65.07(1). Instead, both Williams and Gregory sought relief under CR 76.36 by the filing of original

6

actions in the Court of Appeals seeking the issuance of extraordinary writs. We held:

> The failure of Williams to file pursuant to [CR 65.07(1)] is fatal to his later claim that no adequate remedy by appeal existed. This Court cannot approve of exercises of original jurisdiction in cases where no remedy by appeal exists at the time of the request solely as a result of actions taken, or not taken, by the petitioner.

*Id.* at 586. We will not depart from this sound precedent today. Therefore, because Gregory presently has no remedy by appeal "solely as a result of [his] actions taken, or not taken" his appeal fails to meet this prerequisite to further review.

### III. CONCLUSION

For the foregoing reasons, we affirm the Court of Appeals' well-written opinion denying Gregory's writ petition.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Jeremy Stuart Rogers
Dinsmore & Shohl LLP

COUNSEL FOR APPELLEE ANGELA MCCORMICK BISIG, JUDGE,
JEFFERSON COUNTY CIRCUIT COURT:

Angela Theresa McCormick


COUNSEL FOR REAL PARTY IN INTEREST JAMES ESTES:

H. Kevin Eddins
Eddins Domine Law Group, PLLC


COUNSEL FOR REAL PARTY IN INTEREST CLARA ESTES:

Paul Roman Schurman
Avery & Schurman, PLC


COUNSEL FOR REAL PARTY IN INTEREST E.M.E.:

Franklin Todd Lewis
Lewis Law PLLC

Charles David Yates
David Yates Law

8